et al. 15 minutes for the plaintiff, 15 minutes to be shared by defendants. Mr. Frenkel, you may proceed for the appellant. Good morning, your honors. My name is Kenneth Frenkel. I represent Jennifer Skurko. I'm splitting my time with Mr. Sullivan. I will be arguing for 8 minutes, 5 minutes for the main argument and 3 minutes for rebuttal. The trial court got it right. At the sentencing hearing, Judge Boros had made a decision due to her independent research that the automatic state did not apply. There was absolutely nothing that Jennifer Skurko could do to prevent Judge Boros from proceeding, short of getting into an argument with the court, which would have put Jennifer Skurko and, derivatively, her attorney in the possibility of being contempt of court for arguing with the court. But there's no evidence. The court asked the parties, do you have any law on whether this case should be stayed, or this contempt proceeding should be stayed? As far as I can tell, your client and Ms. Gentile were silent. They didn't say anything in response? Is there anything in the record on how they responded to the court's inquiry? Well, there was no response because Judge Boros said she was relying on an Ohio 9th District Court of Appeals. But then she asked for the party's input. She wasn't like, I've already made my decision. She's like, I think that there's no reason to stay here, but I'm asking for the party's input, as far as I can tell from the record. Well, I think Judge Boros stated on the record that in chambers she had indicated she had done independent research and came to this conclusion. And your clients never disputed that though, right? Well, there was no Ohio 9th District case contrary to what Judge Boros had decided, based her decision on. Also, the sentencing hearing, and I would like to be clear on this, was independent of the contempt hearing. Judge Boros had found Waliber in contempt, then scheduled a sentencing hearing, also scheduled a purge date, which had passed by the time of the sentencing hearing. And the sentencing hearing was an issue between a court and a contemnor, not between a creditor and a debtor. Jennifer Skirko's participation in the sentencing hearing was not even required. She wasn't even required to be there. And the participation was extremely limited. All Leslie Gentile said confirmed what Waliber's attorney said was that the contempt had not been purged. But your client eventually reached some type of settlement after 10 days in jail. Was that with court involvement? It was unclear to me as well. What was the scope of that settlement, that you stayed the contempt proceedings? Well, the court was obviously a participant because the court signed the entry. And the parties apparently came to some type of an agreement there. But the court had to approve it. Doesn't that suggest that there was some participation if the party is, I mean, that's a continuation of the case, if the case is being, or whatever you call a contempt proceeding. Well, it wasn't a contempt proceeding, it was a sentencing proceeding. I mean, it's odd to think of a sentencing proceeding where one of the parties can say, oh, never mind, I'm going to settle now so that you can get out of jail. Well, that did occur obviously. But again, at the time of the sentencing hearing, which was not a collection action, in fact, excuse me, the trial court made a factual determination that there was no attempt to collect the debt at the sentencing hearing. And I think that's a critical thing. And the bankruptcy appellate panel apparently ignored that factual finding. But she didn't, I'm sorry, are you arguing that this was a criminal contempt? It was a criminal contempt in the sense that there was a purge date that had passed. And similar to the Rook case, where there was a purge date that had passed, the But as I read the order, if he came up with the funds on day 10, he would have been let out of jail. That is true. However, this analysis of civil versus criminal contempt is irrelevant in the context of Judge Burroughs determining that the stay didn't apply. So whether it was criminal or civil really has nothing to do with Judge Burroughs' decision. And I think the bankruptcy appellate panel recognized the dilemma that Skirko was in when Judge Burroughs made her decision, because the bankruptcy appellate panel proposed various, I see my time's up, but continue just to answer the question, proposed various scenarios, none of which were practical. Thank you, Your Honor. May it please the Court. Good morning. My name is Brian Sullivan, and I have the pleasure of representing the defendant appellant, Leslie Gentile, in this appeal. I would urge this Court to reverse the bankruptcy appellate panel's determination and affirm the bankruptcy court's dismissal of Mr. Wollaber's claims for two reasons. First, the Worker-Feldman Doctrine precludes the bankruptcy court from reviewing the domestic relations court's determination that the automatic stay did not preclude it from incarcerating Mr. Wollaber for his contemptuous conduct. And two, the bankruptcy appellate panel ignored at least three factual findings by the bankruptcy court that were critical to its determination without determining that those factual findings were clearly erroneous. As it relates to the Worker-Feldman Doctrine, this Court has repeatedly concluded that the court in which the litigation claimed to be stayed as pending has jurisdiction not only to determine its own jurisdiction, but more particularly whether the proceeding pending before it is subject to the automatic stay. That is exactly what Judge Boros did in doing her own independent research and coming to the conclusion that she had the ability to proceed with the sentencing of Mr. Wollaber for his failure to... Wouldn't that Rooker-Feldman analysis kind of eliminate the doctrine that state courts can proceed at their own risk, so to speak, and if a bankruptcy court determines that the proceedings were void, then essentially everything is undone? Under your analysis, the bankruptcy court could never engage in that second step of saying, no, they actually didn't have jurisdiction. It seems like our cases have suggested, like in the NLRB case, that the non-bankruptcy court or agency proceeds at its own risk when it determines things that could be subject to the bankruptcy court's authority. It does, Your Honor, but I believe that the Rooker-Feldman Doctrine then precludes a district court from reviewing the state court entity's determination as to whether it has jurisdiction. You know, this court after the Exxon case has determined that the Rooker-Feldman Doctrine, the central issue, is to determine whether or not the plaintiff's claim in this matter is predicated upon an injury arising out of a state court judgment. And that is fundamentally the issue that's before this court, and that was before the bankruptcy court. The plaintiff's determination or the plaintiff's claim that he was injured as a result of the domestic relations court's determination that he should be incarcerated for failing to purge. And it's our position that under the Rooker-Feldman, under the numerous decisions from this court, that the bankruptcy court was precluded, lacked jurisdiction, from adjudicating the claim that the plaintiff was injured as a result of the domestic relations court's incarceration. I would also point out that the bankruptcy court made three critical findings, which the bankruptcy appellate panel ignored, and which were not clearly erroneous. First and foremost, the bankruptcy court judge in page 42 of the transcript of proceedings concluded that Ms. Skirko's motion for contempt had been resolved in a July 22, 2013 hearing, such that the only matter before the domestic relations court on the October 8 hearing was the sentencing, not Mr. Wolleber's contempt. The court went on to hold in page 45 of the transcript that the only issue before the domestic relations court was the enforcement of the court's order of contempt, and that the defendants in this case could not have the motion, to withdraw their motion for contempt, because that issue had already been ruled upon by the domestic relations court. It was clear, both from the transcript of the domestic relations court's proceeding, as well as from the testimony that was presented before the bankruptcy court, that the only issue before the domestic relations court was the sentencing of Mr. Wolleber for his failure to purge his... But wouldn't you, would you say that under the plain text of the automatic state provision 362, that that sentencing proceeding was a, quote, continuation of a judicial administrative or other action or proceeding against the debtor? I mean, that's the way I... We're talking about the text, this is a bankruptcy code, it's a statutory text, it says the automatic state includes a continuation of a proceeding. Why would the sentencing hearing not qualify as a continuation of the proceeding? It's not a continuation of a proceeding to collect a debt from a debtor. It was a proceeding within which the court was exercising its inherent authority to enforce its prior orders that this, that Mr. Wolleber had been in contempt of court. And it was a sentencing of Mr. Wolleber for his contemptuous conduct. It was not an effort to collect a debt. And as Mr. Frankel points out, the issue, the matter was between the court and the contemnor. It was not between the plaintiff, Mr. Wolleber, and the defendants. And so we would submit that for those reasons, the bankruptcy court properly disposed of the claims against the defendants, and the bankruptcy appellate panel improperly reversed that determination. If there are no further questions, I'll reserve the balance of my time for rebuttal. Thank you. Good morning. May it please the court. My name is Antoinette Freeberg, and I represent the plaintiff and appellee Lawrence Wolleber. We are requesting this court to uphold the bankruptcy appellate panel's decision overturning the trial court's finding that there was no stay violation in this case. The automatic stay under 11 U.S.C. 362 is the state's backbone of bankruptcy law. This is the code provision that permits debtors to get a breather, take a break, and then commence with an orderly attempt to either repay debts in a Chapter 13 or liquidate in a Chapter 7 case. So because this is such an important statute, there are very limited exceptions. Exceptions such as for a child support collection or a criminal contempt proceeding or a criminal proceeding in general, those are not stayed by the automatic stay. Can I ask, how would your claim be presented if Serco and Gentile had said at that hearing, yes, we think the stay applies, you need to stay the sentencing proceeding? And the state court said in response, no, you're just wrong. I'm going to follow what I think is the appropriate view of the law, and then sentenced him, and everything happened the same. It seems quite strange to me to think that they should be on the hook for violating an automatic stay in which they expressly indicated to the court that the stay should apply. So how would your legal rule that you're going to have us write deal with that scenario? That is an excellent question. There have been other courts that have addressed that. Not in our circuit, but the Ingrid Goodson case had a similar scenario with parties that had been at war for quite some time. And mid-trial, the court decided on its own volition to declare, this is suddenly a criminal contempt. We're not civil contempt anymore. Now, the other party went along with it, and they still went through the trial. And the court found that there was a violation of the stay, because even though the court did it on its own volition, the other parties participated. Ultimately, this contempt proceeding is an action to collect the debt. Does that mean, under your view, that the other parties just have to abdicate, and so the state court says, we're going to proceed, and the other parties, no, we have to leave in order to avoid liability under violating the automatic stay? I think that that would end up in a very fact-intensive analysis in that situation. Clearly, the other party is still subject to contempt of the court if they don't... Why doesn't the word, no parties are arguing, the statute that you're suing under says there are no parties. I'm curious how they can be said to be willful as a matter of law when they're relying on state court judges. It seems to me, generally speaking, we'd want parties to rely on judges to answer questions for them. How would you say that they've been willfully violating the stay when the state court judge said that the stay doesn't even apply? In this situation, Your Honor, the court did indicate that the judge indicated that she would accept any agreement that the parties would take, so she was open to suggestions. Also, the motion for contempt, although the judge already found Mr. Willeber in contempt, it is an action to collect the debt. The only purpose for the contempt action was to get Mr. Willeber to pay the property settlement. The entire action was an attempt to collect the debt. The party that the judge would... Let's say the judge said, you know what, this is not stayed. We're going to go forward, and they proceed, and they collect the payment. They're collecting the funds. They're witnessing everything going on. They put the court into action. The court only acts upon filings of parties, complaints being filed, motions being filed. That is correct, Your Honor. I would akin this to... In a situation that I think we see all the time is foreclosure being filed. Once the judgment of foreclosure is entered and the sale requested, the party has to do nothing else until the court sets it several months down the road. It's already well established that even though there's no other action taken, if that foreclosure sale happens, it should have been stayed, and it's a violation. Whether it's willful or not, if it's months down the road, that's another situation. There are several cases... Counsel, I'm sorry. The bankruptcy judge held a trial. Is that correct? Yes. Okay. The BAP reversed it on what particular finding, that it wasn't a willful violation or that there was no duty to do anything? The bankruptcy panel decided that the court erred in finding that there was nothing to be stayed because the court made a decision that the matter couldn't be stayed because it was just the follow-through of the contempt. Because it was what? The bankruptcy court made a ruling that because the contempt was found prior to the sentencing and prior to the bankruptcy filing, that there was nothing to be stayed. Then the court also found that even if there had been something to be stayed, that the defendants had no duty, no affirmative duty, to take any action. That they could stand there and the fact that they stood there was okay. So if we conclude that that ruling was erroneous, it would go back for a trial. Is that right? Yes, Your Honor, because the judge granted judgment after the conclusion of the plaintiff's case. So the BAP reversed and remanded for the opportunity for the defendant to have to put on some testimony that they took some affirmative action to try to stop the case. As a practical matter, what affirmative action could they have taken short of saying, we're just the ex-wife, for example, I'm just going to ask the bankruptcy court to allow me to do what my former husband owes me? Other than doing that, what really could they have done? The defendants could have requested in the state court with the state court judge to allow them time to ask for relief from stay. That's what the BAP indicated. They could have done that. They could have filed something after. Even assuming that the judge that they opposed it and the judge went forward with the sentencing, they still could have stopped things. The entire confinement of Mr. Willebur was a continuing stay violation. And clearly there was something that they could do. But why would they think that they need to stop things when the judge just told them the automatic stay doesn't apply? I mean, yeah, they could have filed the motion you just requested, but there was no need to file the motion because of the judge's own representations to the parties. It seems that it's really putting them between a rock and a hard place here where you have, essentially, you're telling them that they should have violated what the judge told them. And generally we think we like it when judge parties follow what the judge is telling them to do. And that is a more complicated question. I do think, though, we don't even get to that point because there was absolutely no attempt to do anything. And the matter was stayed. What if they didn't . . . I mean, you've got a judge who says, look, I'm willing to hear anything you say, but I don't think this applies to me. And she has jurisdiction to make that determination. So what are they supposed to do? I mean, his own lawyer didn't even come up with anything, right? That is correct. The attorney that he had representing him, there was not a bankruptcy attorney. And he was relying on the notice of stay that had been filed by the bankruptcy attorney. Was the BAP correct when it said that the debtor's lawyer doesn't have any obligation to do anything about this, even when asked whether there is any law that has a bearing on this? Well, Your Honor, I think at the time of the trial or at the sentencing hearing, I think that he . . . I don't know that he would have been able to pull a case law on the spot to say that he did inform the court that there was a stay. So I think that once the . . . BAP said he didn't have any . . . as I read the BAP's opinion, the BAP said he didn't have any obligation to do anything. Well, I think . . . I mean, I think you have to let the court know that there's a stay. Obviously, if the court . . . But that's clear. This court knew it, right? I mean, her lawyer knew and she knew that the court understood that there was a bankruptcy stay. That is correct. But the entire principle of the Bankruptcy Code is to allow debtors a fresh start. If we require the debtors, if we shift the burden to the debtors in every situation to take action, then we are just completely flipping the Bankruptcy Code. Why isn't that remedied by the notion that, okay, so the actions in violation of the stay, the Bankruptcy Court can consider void. And so, suppose that they coerced the funds out of your client. If the Bankruptcy Court thought that the automatic stay had been violated by that proceeding, couldn't the Bankruptcy Court demand a callback from the other side for the funds that were provided by a court that acted . . . Yeah, I'm sure that they could do that. We don't have that situation here because we undo 10 days of incarceration. But yes, I mean, certainly whenever there's a violation, you can get your damages back, whether it is an actual monetary. For example, if someone was garnished past, wages were garnished after a filing, they would be entitled to get those garnished funds back. And that's well established. We do that. That happens constantly. This is just more of an unusual situation. But if it's always incumbent upon the debtor to take action, the court asked Mr. Wilber's attorney at the hearing, and the defendants say, well, it would have been a futile act to try to say anything. But the judge asked the parties. The judge asked the parties how they'd want to proceed. The judge gave opportunity for someone to say, hey, let's take a step back and let's make sure that we're doing this correctly. The whole action was to collect the debt. In terms of the Rooker-Feldman option, do you have any cases where the injury comes out of the state court's ruling that the stay doesn't apply? I do not. I don't believe. Looking at the BAP decision, I just believe that they address the issue, say that the proceedings are parallel. The stay violation is a parallel action. And although it did come from, everything is going to come from a prior order. If there's an injury, it's going to come from a prior order. But the stay violation itself is not, the court is not opposing the sentencing, saying that that is what caused the injury, other than that the stay violation should have been addressed first. I did not make that clear. So with that, the judge made the determination and did the sentencing, and the court went with the ability to determine. They have a parallel claim that runs alongside the other claim, and they can make a determination of the stay. And the court is, any state court that makes a determination of a bankruptcy stay, if they're going to do that, they need to do it correctly. They need to actually get it right. Otherwise, there is a claim in the bankruptcy court for a review of that determination. So I'm asking you, do you have a case where the injury being claimed in the bankruptcy court arises from the state court decision on the stay? I don't have another, I don't have a specific case on that, Your Honor. I guess I think that the complicated issue is that the injury is always going to result from whatever occurred in the lower court. But the injury is, the stay violation is a separate claim in the bankruptcy court for what happened in the lower court. The bankruptcy court is not saying that he shouldn't have been sentenced because that was not appropriate under circuit. Didn't the Ninth Circuit essentially reject Rooker-Feldman in the bankruptcy context? That's the way I read. Is it Henry Schwartz or the Ninth Circuit? It's for Rooker-Feldman. I think that's why I was asking about Rooker-Feldman, whether it should apply here. The way I read the Ninth Circuit decision that I thought was Henry Schwartz, but I might have got the name wrong, was that Rooker-Feldman is kind of a gloss on the statute of federal jurisdiction 1331 that limits district court's rulings to new claims and not appeals of state court claims. But the Ninth Circuit suggested that that doesn't even apply to the bankruptcy statute. I think you cited it in your brief. I do believe so. Is that your position that it doesn't apply? It doesn't apply. And again, the court's not reviewing the... The judge's ruling in the domestic relations court was just that he was sentenced to incarceration. The judge didn't... We didn't... There was no appeal of the ruling that the state didn't apply. This is literally a new claim in the bankruptcy court. The bankruptcy court is not attempting to... Was not attempting to say that the judge erroneously sentenced him based upon the contempt proceeding. It's a separate claim and violation of the state. But we don't believe the Rooker-Feldman applies because that's a claim that, although it's parallel to it, it's not the same claim. Okay. Are you claiming Rooker-Feldman doesn't apply in the bankruptcy context or are you saying Rooker-Feldman doesn't apply on the facts of this case? I think the Rooker-Feldman doctrine is very limited in this situation, but it's not... It certainly does not apply in this case under the facts. And I got the case name wrong. It's Gruntz, just for the record. The case name that I cited is actually Gruntz, not Schwartz. I just wanted to correct myself. Any other questions? Any questions? No. Your time's up. Thank you. A sentencing is not an attempt to collect a debt. The sentencing hearing is between a court and a contemnor. The analogy of foreclosures and wage garnishments does not apply. Those are situations involving a creditor and a debtor, not a court and a contemnor, as what we have here. But the court's order was clear that the way to get out was to pay what he owed. That's true, except for one thing. Jennifer Skirko could not anticipate that that was going to be the court's order on the sentencing. That did occur. But again, if there was a sentencing hearing, it would be a court order on the part of Judge Boros who violated the stay. And the sins of Judge Boros should not be visited upon Jennifer Skirko. Mr. Wallaber, rather than appealing Judge Boros if he felt Judge Boros was in error, chose the path of suing Judge Boros and Jennifer Skirko and Leslie Gentile. Only Judge Boros could stop the sentencing hearing. There's no requirement that a litigant should or a party should commit a futile act. To be a little colloquial. I mean, I suppose that might be a question of fact when there's a trial, whether even if the attorney had said, you know, we have some real doubts whether the stay applies or I think that the stay does apply, that she would have gone forward anyway. I suppose that's a question of fact on causation. And I suppose some of these other arguments are to be, if any, et cetera. But I don't know that you carry the day on the question whether there's any duty of the creditor's lawyer to say, I don't think you can go forward. There's a duty certainly to notify Judge Boros that there's a bankruptcy filed and there's a stay. Lawrence Waldenberg's attorney filed that notice of stay. It would have certainly been redundant for Jennifer Skirko to file a notice of stay and Leslie Gentile to file notice of stay or notice of bankruptcy. The court was aware of it. And again, to say to Judge Boros, Judge, you're wrong. Then Judge Boros would say, that's nice, but this is my ruling. I don't think the stay applies. But she didn't say, Judge, you're wrong. No, that's true, except it was clear at the hearing, the sentencing hearing, that Judge Boros had made her decision to start arguing with the judge. Quite frankly, when a judge makes a decision, it's time to accept the decision. And if you believe the court is the path that Mr. Waldenberg decided to go down. Judge Boros also indicated, to get back to the BAPS, well, I see my time's up. So, thank you, Your Honor. Thank you. Just briefly, Appellee's Counsel continues to represent that what occurred at the sentencing hearing was an attempt to collect a debt. That applies in the face of a factual finding made by the Bankruptcy Court Judge on page 44 of the transcript, where she specifically concluded that the defendant's actions at the hearings were not an attempt to collect payment or to negotiate a debt. The next question I want to address is whether Judge Boros was wrong in concluding that she had the ability to sentence Mr. Woloper. This court in Dominic Restaurant of Dayton v. Manta, Judge Batchelder, one of your decisions, concluded that it is within a court's inherent power to take whatever steps are necessary to ensure that those persons within its power comply with its order. We cannot conceive that Congress intended to strip a county, I'm sorry, to strip a court of this power and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If it were so, the court's orders could be rendered meaningless. So we would submit that it would be futile for the defendants to have attempted to convince Judge Boros that she was incorrect in her determination that she had the ability to proceed with sentencing Mr. Woloper. For those reasons, we would ask that the judgment of the Bankruptcy Court dismissing this claim be affirmed and the decision of the Bankruptcy  Thank you.